[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE' WHETHER A LETTER COMPLIES WITH THE STATUTE OFFRAUDS AS A CONTRACT FOR SALE OF PROPERTY SO AS TO PRECLUDE SUMMARY PROCESS
On June 15, 1993 plaintiff Margaret Binkowitz purchased a house known as 16 Fairfield Drive, Southbury, Connecticut, from Nutmeg Federal Savings Loan for the sum of $117,500.00. The plaintiff paid cash for the house. Defendants Charles and Kathy Murphy occupied the premises prior to the closing and have remained in possession. Defendant Kathy Murphy is the plaintiff's granddaughter. Plaintiff Margaret Binkowitz has brought this summary process action in which she alleges that she leased the premises to the defendants on a verbal month-to-month basis for the consideration of $500.00 per month. In addition, the plaintiff alleges that the defendants agreed to pay the real estate taxes as they became due, pay insurance costs and keep the premises in good repair. Any money the plaintiff received has been treated as rent. The plaintiff alleges that the defendants' rental payments are in arrears and that they have failed to pay the real estate taxes.
The defendants have filed a motion to dismiss in which they claim that an agreement signed by the plaintiff creates in them an ownership interest in the property and complies with the statute of frauds. The defendants further claim that they have complied with their agreement to pay mortgage taxes and insurance. The agreement is in Margaret Binkowitz's handwriting and reads as follows:
Agreement to Cathy and Charles Murphy of 16 Fairfield Drive Southbury Conn. As new owner of the property they have agreed to pay off the loan of $117,500 and pay the taxes and insurance and CT Page 5206 repairs on the property in and out doors of the place.
There will be no charge for the loan when paid up and they will pay in every month till its paid up and I will turn the property over to them. The more they pay then it will be paid up sooner.
In case some thing happens to me you will pay to my two sons Wm and John Binkowitz and they will do as I say the same deal. They are taking care of my estate.
 Mrs. Margaret Binkowitz 30 Thrope St. Fairfield, Conn. 06430 Son Mr. Wm Binkowitz 9 Ira-Von Circle Foxiolo, Mass. Phone 1-508-543-4856
In response to the defendants' motion to dismiss, the plaintiff argues that the agreement is not a valid contract for sale because it does not comply with the statute of frauds. In this regard the plaintiff points out that the agreement is undated, unwitnessed, not notarized, is unacknowledged, lacks a signature line and is not signed by the defendants. The plaintiff further argues that there was never a loan because she paid cash for the property and there is no evidence that she made a loan to the defendants. Therefore, the plaintiff claims that the term `no charge' is unclear. The plaintiff also asserts that it is unclear as to what property is the subject matter of the agreement since there is no description of any property. Furthermore, the plaintiff maintains that the agreement does not state how much is to be paid each month, which day of the month payments are to be made, where the payments are to be made and the length of time the payments are to continue.
The defendants claim that the agreement is clearly a purchase money mortgage between the parties and is in compliance with the statute of frauds. The defendants point our that it is in writing, it names the parties, it gives the address of the property, specifies its terms and is signed by the plaintiff. The defendants claim that the term `loan' refers to the loan from the plaintiff to them for said premises and that `no charge' means that they will repay the $117,500 loan to the plaintiff interest CT Page 5207 free. The defendants contend that because the agreement is a valid contract under the statute of frauds, summary process is an inappropriate vehicle for resolving any dispute between the parties.
General Statutes § 52-550 provides in pertinent part: "No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged; . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property. . . ." "In order to satisfy the statute of frauds, an agreement must state the contract with such certainty that its essentials can be known from the memorandum itself, without the aid of parol proof, or from a reference contained therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement." Gendelman v.Mongillo, 96 Conn. 541, 543 (1921); Miller v. Vordenbaum,105 Conn. 636, 638 (1927); Santoro v. Mack, 108 Conn. 683, 688
(1929). It is well established that a written memorandum need not consist of a single document, nor is it necessary that it should be drawn up in any particular form. Burns v. Garey, 101 Conn. 323,329 (1924); Robert Lawrence Assoc. Inc. v. Del Vecchio,178 Conn. 1, 20 (1979). "The statute of frauds does not require that the memorandum constitute the contract itself; all that is required is that the memorandum furnish with reasonable certainty, evidence that the parties have come to a complete agreement." Lynch v. Davis, 181 Conn. 434, 438 (1980). "The essentials of the agreement must be determined from the memorandum itself or by a reference contained therein to some other writing or thing certain." Garre v. Geryk, 145 Conn. 669,673 (1958); Robert Lawrence Assoc., Inc., supra, at 12-13.
"The function of the statute of frauds is evidentiary, to prevent enforcement through fraud or perjury of contracts never in fact made." Lynch, supra, at 440-41. "A memorandum is insufficient where a decree based thereon would not carry out the true agreement as made by the parties or where the agreement stated in the memorandum does not express the entire agreement between the parties so these must be supplemented by parol evidence of the negotiations." Town of East Haven v. City of NewHaven, 159 Conn. 453, 461, 462 (1970). In Gendelman v. Mongillo,supra, the Court noted that "[t]he general rule is that parol evidence bearing upon the terms of the contract is not CT Page 5208 admissible, because, if they vary it, it is a weaker species of evidence, and cannot control it, and if they are to the same effect, they add no strength to it, are immaterial, and therefore inadmissible; and because, when parties have reduced the evidence of their contract to writing, it supersedes all the verbal negotiations which preceded it." Gendelman at 544. "But parol evidence of the situation and circumstances of the land or other subject-matter about which the contract treats, is admissible to explain and give effect to the terms of the contract." Gendelmansupra at 544. For example, in Gendelman, the Court allowed parol evidence to prove that "6 Washington Place" was a place in the town or city of the vendors' residence, and then showing that the vendors owned number six in that street or place; and therefore that the land sold was described with sufficient certainty. However, the Court did not allow parol evidence to explain what the parties intended as to the method and terms of payment.
The court shall now address plaintiff's assertion that the document violates the statute of frauds because it is undated, unwitnessed, not notarized, not acknowledged, lacks a signature line and is not signed by the defendants. Since the agreement does not have to be drawn up in any particular form, the statute of frauds does not require that the document be dated, witnessed, notarized, acknowledged or have a signature line. However, the statute of frauds does require that the writing be signed by the party, or the agent of the party, to be charged. General Statutes52-550. Here, the signature requirement of "the party sought to be charged" would be the plaintiff, Margaret Binkowitz. The agreement is clearly in Mrs. Binkowitz's handwriting and at the end she signs her name along with her address. Therefore, the signature requirement is sufficient under the statute of frauds.
The plaintiff further maintains that the purported letter of agreement fails to satisfy the statute of frauds due to its deficiency in not specifying the subject of the sale, as well as the parties and the terms of the sale. The plaintiff claims that it is unclear as to what property is the subject matter of the letter since there is no description of the property. However, the document clearly states, `Agreement to Cathy and Charles Murphy of 16 Fairfield Drive Southbury Conn. As new owner of the property. . . .' This language certainly describes the property and names the parties.
The court shall now address plaintiff's claim that the letter does not satisfy the "terms of the agreement" standard of the CT Page 5209 statute of frauds. In this regard the plaintiff asserts that although the price is included in the letter, it does not set out the "terms of the agreement" by which the $117,500 is to be paid; that is to say, it does not state how much is to be paid each month, which day of the month payments are to be made, where payments are to be made and for what length of time payments are to continue. The Supreme Court has ruled that "a memorandum is insufficient if it fails to specify the terms of payment of any part of the purchase price." Lynch, supra at 439. When the terms of a purchase money mortgage are not known, the statute of frauds prevents enforcement of the contract. Lynch, supra, at 438-39.
The court opinion in Benton v. Colson, 115 Conn. 720 (1932) illustrates the foregoing point. The plaintiff in Benton, supra,
signed and delivered to the defendant a paper which did not provide for the terms of the balance of the purchase price. The paper read as follows: "Receipt on account of purchase price of 15.52 more or less acres of land located off of Highland Ave. between Flax Hill Road and Devil's Garden Road. The purchase price to be $15,000. $2,000 to be paid on signing of contract-$2000 to be paid Aug. 25th and $1000 October 25th at which time title will pass." The trial court held inter alia, that there was no sufficient memorandum of the terms of sale for the satisfaction of the statute of frauds. The Supreme Court agreed and stated that "[i]t is apparent that how and when that balance was to be paid either was agreed upon and not stated in the writing or was left open for future agreement. . . . Benton,supra, at 720-721.
Furthermore, in Montanaro v. Pandolfini, 148 Conn. 153 (1961), the Supreme Court found that a signed real estate sales agreement which named the parties, described the property, stated the price, nevertheless violated the statute of frauds. The purchase money mortgage stated: `By executing purchase money mortgage to seller in the amount of $18,000 payable monthly for 15 yrs at 5%.' The Court noted that the mortgage provision in the agreement did not specify when the monthly payments were to commence, nor did it state the amount of each payment. The Court also noted that the agreement did not state that the payments have to be equal in amount, either as to the payments on principal or as to the combined payments on principal and interest. The Supreme Court used the following language in its ruling:
 All of the terms and conditions of payment of the principal sum of the mortgage over the period of fifteen years during CT Page 5210 which it was to run should have been set out in the agreement . . . . Otherwise, parol evidence would be required to establish the undertaking of the parties. The agreement, so far as the provision relating to the purchase money mortgage is concerned, fails to meet the requirements of the statute. It is ambiguous, indefinite and uncertain.
 Id. at 158.
The Appellate Court also has addressed the question of whether under the statute of frauds a contract is insufficient if it fails to specify the terms of payment of any part of purchase price. In the case of Carta v. Marino, 13 Conn. App. 677, 680,681 (1988) the Appellate Court was called upon to review the enforceability of a real estate contract the purchase price of which was stated as follows:
 . . . (1) $5,000 deposit. . . . (2) the balance, $95,000 to be paid as follows: (a) $55,000 by cash, bank or certified check at the closing on transfer of title; (b) the sum of $40,000 shall be payable by a purchase money mortgage. . . .' `Interest shall accrue on the unpaid principal balance . . . at rate of 10% and payments thereon shall commence ninety days after the date of the promissory note and be payable monthly thereafter until two years following the date of said note at which point the remaining principal together with accrued interest shall be due and payable in full.
 Id. at 678.
The seller then conveyed the property to another person, the named defendant. The plaintiff brought suit claiming that the defendant interfered with the contract between the plaintiff and the seller. The defendant claimed that the agreement did not satisfy the statute of frauds because the section concerning the purchase price did not specify a specific monthly amount, nor did it clearly state whether the payments were to be all interest, interest or principal, equal or unequal, or based upon amortization. The Court held that the agreement violated the statute of frauds because the section concerning the purchase price did not specify the monthly amount of payment or clearly state whether payments were to be all interest, interest or principal, equal or unequal, or based upon amortization. Id. at 680-681. CT Page 5211
In the case at bar the defendants allege that a purchase money mortgage was created. The purported agreement provides that the defendants `agreed to pay off the loan of $117,500 . . . there will be no charge for the loan when paid up and they will pay in every month till its paid up. ' Even though the method of payment is known, the precise terms of that method of payment are not specified. The purported agreement does not state how much the payment is each month, nor when the payments are to be completed. Although ordinarily ". . . the law will imply a reasonable time for performance if none has been specified" in an agreement, Breen v. Phelps, 186 Conn. 86, 93 (1982), where, as here, there is nothing in the memorandum by which the time of complete performance can be determined, remediation through implying a reasonable time of performance is neither appropriate nor possible. Breen v. Phelps, Id.
In conclusion, the court finds that even though the purported agreement is in writing, is signed by the party to be charged, describes the subject of the sale, and states a price, it lacks the element of "terms of payment," required by the statute of frauds. In this regard, the purported agreement does not state the amount of the monthly payment nor does it state a time when payments are to commence or end. Furthermore, the purported agreement does not contain a sufficient guidepost for constructing with reasonable certainty a contemplated time by which performance under the "agreement" would be completed. Because of the absence of the "terms of payment" in the purported agreement, it does not satisfy and is unenforceable under the statute of frauds.
For the foregoing reasons and upon the foregoing authorities, the defendants' Motion to Dismiss is denied.
Clarance J. Jones, Judge