LOUISA PETERS, Plaintiff, *v.* JOSEPH P. DAY and WILLIAM H. REYNOLDS, Defendants.

LOUISA PETERS, Plaintiff, *v.* JOSEPH P. DAY and WILLIAM H. REYNOLDS, Defendants.

Supreme Court, New York Special Term, May 9, 1925.

Auctioneers — liability of auctioneer — action for damages arising from refusal of auctioneer to sign memorandum of sale or accept deposit by plaintiff, bidder, at public sale of real estate since greatly appreciated in value — auctioneer's implied agreement with bidder to accept deposit is only agreement to reduce contract to writing — auctioneer not liable on tort arising from alleged breach of contract — officer of corporation owning lands not liable for inducing auctioneer to refuse to complete sale — complaint dismissed for insufficiency.

An auctioneer's implied agreement with the highest bidder to accept his bid is only an agreement to reduce the contract to writing, and his acceptance of the bid does not create a contractual duty toward the bidder to execute a written memorandum of sale.

An auctioneer may refuse to execute a memorandum of sale, no matter how arbitrary his refusal may be, without incurring legal liability therefor.

Accordingly, plaintiff's action against an auctioneer for damages arising from his refusal to sign a memorandum of sale or accept a deposit by the plaintiff, a bidder at a public sale of real estate, which has since greatly appreciated in value, should be dismissed as not stating facts sufficient to constitute a cause of action, in the absence of an enforcible contract. The auctioneer cannot be held liable upon a tort arising out of an alleged breach of the contract.

Moreover, said auctioneer's principal, an officer of the corporation owning the land put up for sale, cannot be held liable for inducing his auctioneer to refuse to complete the sale, since, in the absence of any liability on the part of the auctioneer for breach of warranty of an enforcible contract, no liability can be fastened upon said principal.

MOTION by each of the two defendants to dismiss the amended complaint under rules 106 and 107 of the Rules of Civil Practice on the ground that it does not state facts sufficient to constitute a cause of action.

*Solomon Sufrin* [*Robert Jablin* of counsel], for the plaintiff.

*Sayers Brothers* [*William John Powell* of counsel], for the defendant Joseph P. Day.

*Irving G. Warshaw,* for the defendant William H. Reynolds.

LEVY, J.:

The complaint alleges that the defendant Day, as auctioneer, offered at public sale certain lots in Long Beach, N. Y., pursuant to authorization by the owner, a corporation of which the defendant William H. Reynolds is an officer, to sell these lots at such

public auction to the highest bidder without reserve; that plaintiff's bid for these lots was accepted by the auctioneer, and the property " knocked down " to her; that she was ready, willing and able to go through with the transaction, but defendant Day refused to sign a memorandum of sale or to accept a deposit; that this refusal was prompted by defendant Day acting in concert with defendant Reynolds who, maliciously and with knowledge of plaintiff's rights and with intent to interfere with them, prevailed upon defendant Day to refuse to sign the memorandum of sale or to accept the deposit; that the property was reoffered and resold by Day at the same auction, and has since greatly appreciated in value, by reason of which the plaintiff claims to have been damaged in the sum of $12,000.

The primary question in this case is whether or not the auctioneer owed the plaintiff bidder a contractual duty to sign a memorandum of sale, because if he did not, plaintiff's cause of action against both defendants must fall. The chief reliance of plaintiff is upon the case of *Taylor* v. *Hartnett* (26 Misc. 362). In that case plaintiff sued an auctioneer for failing to accept his bid for stock offered at public auction, his bid being the highest. While the court held that plaintiff could not recover because the auctioneer had a right to exercise his discretion in rejecting bids which were only a trifling advance over the preceding ones, it uttered the dictum that if the stock had been knocked down to the bidders at the price offered by them, " their resistance to a reopening of the bidding would have been well founded."

This dictum it seems to me can only be sustained as authority in cases in which the Statute of Frauds is not operative. Even in the English case of *Warlow* v. *Harrison* (29 L. J. Rep. [N. S.] 14), which was cited with respect in the aforementioned case, although not considered controlling, the Statute of Frauds was excluded as an element. In that case involving a sale of horses by an auctioneer, at public auction, without reserve, the auctioneer refused to sell to the highest bidder. The court ruled that there was an implied contract between the auctioneer and the buyer that the property would be knocked down to the highest bidder. It expressly held that " the case is not at all affected by the 17th section of the Statute of Frauds, which relates only to direct sales, and not to contracts relating to or connected with them." This, of course, is not the effect of our statute (Pers. Prop. Law, § 85, as added by Laws of 1911, chap. 571), which applies both to " contracts to sell " and to " sales." Neither the English case nor the *Taylor* case, both of which involve personal property, is authority for the proposition that in an auction sale the acceptance

of the highest bid by the auctioneer's knock-down without complying with the formalities of the written memorandum takes a real estate contract out of the Statute of Frauds. Nor is there any authority for the proposition that the auctioneer's acceptance creates a duty to the bidder to execute the written memorandum. Apparent countenance may be given to such a view by the headnotes in cases like *Love* v. *Harris* (156 N. C. 88). But this case only goes so far as to hold that the bidder is bound by the auctioneer's signature, because after the drop of the hammer he is presumed, as a matter of law, to be the buyer's agent to execute the memorandum. No irrevocable agency arises after the knockdown and before the memorandum, as the bidder can still withdraw, and the auctioneer can refuse without legal penalty to execute the memorandum, no matter how arbitrary his refusal may be. As to the right of withdrawal by the buyer, the cases are clear. Thus, in *Pike* v. *Balch* (38 Maine, 302, 311) it was held as follows: " The auctioneer is the agent of both parties, and is bound to act for them both, with equal fidelity; and his entry of the name of the purchaser on his book or memorandum containing the particulars of the contract, is a sufficient signing within the statute. Until some one of those things required by the statute, as necessary to complete the contract of sale, be done, a time for repentance remains, and the sale is not perfected. * * * Neither of those things necessary to complete the contract of sale having been done, the business remained unfinished and open for further proceedings." And in *Dunham* v. *Hartman* (153 Mo. 625, 630) the court ruled: " Between the fall of the hammer and the writing of his name in the memorandum, the bidder has a *locus penitentiæ*, and may withdraw his bid." Similarly, our own courts have held that until the written evidence of the sale is signed by either the buyer, auctioneer or seller, the latter could announce his refusal to go through with the sale, even though the auctioneer had knocked the property down to a given bidder. (*Byrne* v. *Fremont Realty Co.*, 120 App. Div. 692.)

As to the refusal of the auctioneer to sign the memorandum, no matter how wrong it may be morally, he can still escape legal liability. His implied agreement with the highest bidder to accept his bid is only an agreement to reduce the contract to writing. Our courts have repeatedly held that the provisions of the Statute of Frauds may not be evaded on the theory that while the contract itself is unenforcible, the contract to make this contract is valid. (*Belmar Contracting Co.* v. *State*, 233 N. Y. 189, 194.)

Nor can the statute be avoided by spelling a tort out of the refusal of the auctioner to go on. As was said in *Steiner* v. *Amer.*

*Alcohol Co.* (181 App. Div. 309, 310; affd., 225 N. Y. 665): " It would be an easy way to completely nullify the Statute of Frauds by claiming that an oral contract made unenforcible because not in writing was made good by the fraudulent intent of the maker of the contract at the time of its makir g not to perform the same. A statement of the proposition would seem to be all that is necessary for its refutation." In the case at bar we have an attempt to hold an auctioneer on a tort arising out of an alleged breach of contract. This cannot be done.

" There is no contract from the violation of which damages, in a legal sense, can arise, where the agreement proved is within the statute. * * * If he [plaintiff] incurred expenses on the faith of the promise, or relying upon the express assurance of the defendant that the corporation would sanction the contract, it is his misfortune; but it furnishes no ground of action.

" The plaintiff is compelled to make the void contract a part of his case in any form of action he may bring, and the statute stands as a barrier against a recovery." (*Dung* v. *Parker*, 52 N. Y. 494, 498, 500.)

Even where the auctioneer representing an undisclosed principal exceeded his authority in knocking down property to a bidder, he could not be held for breach of warranty of authority in the absence of the compliance with the Statute of Frauds, because in order to make the agent liable, the unauthorized contract must be one which the law would enforce against the principal if it had been properly authorized by him. (*Baltzen* v. *Nicolay*, 53 N. Y. 467.) And if no cause of action can be predicated on the auctioneer's breach of warranty of an unenforcible contract, none can arise here, where the auctioneer's principal was disclosed and where the latter was not bound by an enforcible agreement. If neither the principal nor the auctioneer could be held on the contract itself, it follows as a necessary corollary that defendant Reynolds could not be held for inducing the auctioneer to refuse to go through with the deal, since no liability could be fastened upon the latter for this refusal.

There being no sufficient cause of action alleged against the defendants, the motion to dismiss the complaint must be granted, with ten dollars costs to each of the defendants. Settle respective orders on notice.