[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed September 13, 1996
The defendant, NJM Realty Limited Partnership ("NJM"), has moved for summary judgment in this rather unusual case in which the plaintiff claims that it has been damaged because it wanted to buy the defendant's property, but was precluded from submitting a successful bid for the property by the defendant's alleged oral misrepresentations concerning the bidding process.
In the Second Amended Complaint the plaintiff, Foster Road Associates ("Foster"), alleges as follows. NJM was the owner of a parcel of land known as Nutmeg Road North in South Windsor, Connecticut (the "Property"). At some time prior to December 17, 1993 NJM engaged William Raveis Real Estate, Incorporated to act as NJM's agent pursuant to an exclusive listing to sell the Property. Robert Gaucher was an agent employed by William Raveis Real Estate.
Prior to December 17, 1993 Foster and Steeltech Building Products, Inc. ("Steeltech") had submitted offers for the purchase of the Property that were substantially identical as to all terms, including a purchase price of $150,000. On a date not specified in the complaint Gaucher had a telephone conversation with NJM's general partner, Frank Mercede. Based on that conversation Gaucher orally "communicated a bidding process to the plaintiff whereby additional bids were to be submitted to him by 5:00 p.m. on Friday, December 17, 1993." Gaucher further orally informed the plaintiff that the highest and best offer would be entitled to purchase the property.
The Complaint further alleges that Mercede's representations to Gaucher were "designed to induce the plaintiff to make an offer to purchase said property through Mr. Gaucher and Raveis in accordance with the exclusive listing agreement." On December 17, 1993 "in accordance with Mr. Mercede's representations concerning the bidding process, and the exclusive listing held by Raveis," Foster submitted several bids through Gaucher. The last bid was submitted by 5:00 p.m. and was accompanied by a $50,000 deposit. As of 5:00 p.m. on that day Foster had submitted a higher bid than Steeltech had. At some point after 5:00 p.m. on December 17, 1993 Steeltech submitted an additional bid directly to NJM, which bid was for a higher amount than the last bid tendered by Foster. CT Page 5562
The final two paragraphs of the Complaint state:
 20. As a result of Mr. Mercede's representations and the plaintiff's reliance thereon, the plaintiff has been damaged in that it was precluded from purchasing said property.
 21. As a further result of Mercede's representations and the plaintiff's reliance thereon, the plaintiff has been damaged in that it is unable to develop and profit from said property.
The complaint appears to allege either a cause of action for breach on an oral contract to convey the Property, or a cause of action in tort for misrepresentation.
Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connecticut Bank Trust Co. v. Carriage LaneAssociates, 219 Conn. 772, 780-81, 595 A.2d 334 (1991); Lees v.Middlesex Ins. Co., 219 Conn. 644, 650, 594 A.2d 952 (1991). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; D.H.R.Construction Co. v. Donnelly, 180 Conn. 430, 434, 429 A.2d 908
(1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Practice Book §§ 380, 381; Burnsv. Hartford Hospital, 192 Conn. 451, 455, 472 A.2d 1257 (1984). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Town Bank Trust Co. v. Benson, 176 Conn. 304, 309,407 A.2d 971 (1978); Strada v. Connecticut Newspapers, Inc.,193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is whether a party would be entitled to a directed verdict on the same facts. Batickv. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982); New MilfordSavings Bank v. Roina, 38 Conn. App. 240, 243-44, 659 A.2d 1226
(1995).
Summary judgment should only be granted if the pleadings, affidavits and other proof submitted demonstrate that there is no genuine issue as to any material fact. Scinto v. Stam, 224 Conn. 524,530, cert. denied, 114 S.Ct. 176, 126 L.Ed.2d 136 (1993); CT Page 5563Connel v. Colwell, 214 Conn. 242, 246 (1991).
The oral contract alleged in this case is, essentially, that NJM agreed to sell the Property to Foster provided Foster submitted the "highest and best" bid to NJM prior to 5:00 p.m. on December 17, 1993. Such a contract is unenforceable for three reasons: 1) lack of consideration; 2) indefiniteness and uncertainty as to contract terms; and 3) failure to comply with the provisions of the Statute of Frauds, Connecticut General Statutes § 52-550.
Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made. To be enforceable, a contract must be supported by valuable consideration. State National Bank v. Dick, 164 Conn. 523, 529,325 A.2d 235. (1976); Osborne v. Locke Steel Chain Co., 153 Conn. 527,530; First New Haven Nat. Bank v. Statewide Motors,33 Conn. Sup. 579, 581, 582, 363 A.2d 751; Finlay v. Swirsky,103 Conn. 624, 631, 131 A. 42 (1925); Gruber v. Klein, 102 Conn. 34,36-37, 127 A. 907 (1925). The plaintiff does not allege that it had an option on the Property or that it made any payment to NJM to secure the right to purchase the Property. Therefore, the oral promise of NJM to permit the plaintiff to purchase the Property under the conditions alleged lacks consideration.
To be enforceable, an agreement must be definite and certain as to its terms and requirements. The terms of a contract are sufficiently certain and definite if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. Dunham v. Dunham, 204 Conn. 303, 313,528 A.2d 1123 (1988); Presidential Capital Corp. v. Reale, 231 Conn. 500,506, 507, 652 A.2d 489 (1994); 1 Corbin on Contracts, § 4.1.
The Statute of Frauds, Connecticut General Statutes §52-550, provides, in pertinent part:
 No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property . . .
However plain and complete the terms of an oral contract for CT Page 5564 the sale and purchase of real estate, it cannot be enforced against a party thereto unless he, or his agent, has signed a written memorandum which recites the essential elements of the contract with reasonable certainty.[1] Scinto v. Clericuzio,1 Conn. App. 566, 568, 474 A.2d 102 (1984). There is clearly no such document in this case.
To comply with the Statute of Frauds, a writing "must state the contract with such certainty that its essentials can be known from the memorandum itself, without the aid of parol proof, or from a reference contained therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement." Breen v. Phelps,186 Conn. 86, 92, 439 A.2d 1066 (1982). Among the essential terms that must be contained in the writing are the total purchase price, Garre v. Geryk, 145 Conn. 669, 674, 145 A.2d 829 (1958), and terms of payment of all parts of the purchase price, Carta v.Marino, 13 Conn. App. 677, 680-81, 538 A.2d 1091 (1988).
An oral agreement to enter into a contract for the sale of land is unenforceable:
 The general rule is that an oral agreement to reduce to writing a contract which is within the scope of the operation of the statute of frauds, or to sign an agreement which the statute of frauds requires to be in writing, is invalid and unenforceable . . . [I]t is absurd to say that an oral promise in relation to certain subject matter is invalid, but that a promise that the party will thereafter bind himself with respect to the subject matter is valid.
72 Am.Jur.2d, "Statute of Frauds" § 4: see also 3 Williston on Contracts, § 491 (3rd Ed. 1960). "The provisions of the statute of frauds may not be evaded on the theory that while the contract itself is unenforceable, the contract to make this contract is valid." Peters v. Day, 210 N.Y.S. 42, 45 (Sup.Ct. 1925).
Based on the foregoing principles, a seller's oral acceptance of a bid on a piece of real estate is unenforceable under the Statute of Frauds, even where the seller has stated in advance that the property shall be awarded to the highest bidder. InS.S.I. Investors Limited v. Korea Tungsten Mining Co., Ltd., 438 CT Page5565 N.Y.S.2d 96 (App.Div. 1981), the seller offered for sale by a sealed-bid auction a parcel of real estate in Manhattan. The seller advertised that the property would be awarded to the highest bidder, and all bids were to be postmarked no later than November 30, 1979. The plaintiff submitted a bid for "$556,000 and/or one dollar higher than the highest bidding price" received at the auction. A third party bid $750,000 on an all cash basis. The seller accepted the third party's bid and the plaintiff sued for specific performance.
In ruling in favor of the seller, the Court stated:
 When an auctioneer presents an article for sale at auction and asks for bids, he is ordinarily not making an operative offer and creates no power of acceptance. Instead, he is asking for offers to be made to him; and the bids made in response thereto are themselves offers that can be revoked by the bidders prior to an acceptance by the auctioneer. This is true even though the seller or his representative has issued advertisements or made other statements that the article will be sold to the highest bidder, or is offered for sale to the highest bidder. Such statements are merely preliminary negotiations, not intended . . . to affect legal relations. When such is the case, the seller or his representative is as free to reject the bids, highest to lowest, as are the bidders to withdraw them.
438 N.Y.S.2d at 99, quoting 1 Corbin, Contracts § 108. (Emphasis added.)
The Court in S.S.I. Investors Limited went on to state that even if the offer to sell to the highest bidder was construed as a valid offer which the plaintiff had accepted with its bid, it was an oral agreement for the sale of land, unenforceable under the Statute of Frauds. Id. at 100.
In this case the statements made by NJM through Gaucher concerning the bids on the Property were nothing more than an invitation to the plaintiff to make an offer.
One can envision a set of facts in which a plaintiff might state a valid cause of action for negligent misrepresentation where it took actions in reliance on a seller's representations. CT Page 5566 For example, if a seller told a prospective buyer that he would sell him Blackacre if the buyer produced $50,000 in cash before sundown and then refused to sell after the buyer had timely tendered the cash, the buyer might have a cause of action for any amounts he reasonably expended in reliance on the seller's representation, i.e., interest expense or other amounts expended in obtaining the cash. The plaintiff in this case does not seek to recover damages of that nature. Instead, it seeks to recover profits it would have earned if it had purchased the property. In other words, the plaintiff seeks damages for breach of the contract to sell the Property.
"The plaintiff cannot avoid the bar of the Statute of Frauds by labeling the cause of action as one to recover damages for fraud where, as here, proof of a contract, void under the Statute of Frauds, is essential to maintain the action." Bernbach v. CampWah-Nee in the Berkshires, 574 N.Y.S.2d 571, 573 (App.Div. 1991). See also Weakly v. East, 900 S.W.2d 755, 759 (Tex.App. 1995) (claims of fraud, civil conspiracy, tortious interference, and negligent misrepresentation all unenforceable because each "has as its nucleus [defendant's] unenforceable oral contract to buy their property"); Cherokee Falls Investments v. Smith,445 S.E.2d 572 (Ga.App. 1994) (tortious interference claim, rooted in unenforceable oral contract, barred under Statute of Frauds);Peters v. Day, 210 N.Y.S. 42 (Sup.Ct. 1925) (tort claims against auctioneer of land barred under Statute of Frauds). Moreover, § 52-550 is not limited to actions for "breach of contract," but rather provides that "no civil action" shall be maintained upon an oral agreement to sell real estate.
In this case Foster's "misrepresentation" claim against NJM is based on alleged instructions from Mercede to Gaucher. Those alleged instructions were along the lines of: "Mr. Gaucher, tell Foster that if it submits the high bid to you by 5:00 p.m. on December 17th, then NJM will sell the Property to Foster." This is nothing more than a claim that NJM, through Gaucher, broke an oral promise to sell the Property to Foster.
In certain circumstances, partial performance permits the enforcement of a contract which would be otherwise barred by the Statute of Frauds:
 "In those cases where one party, in reliance upon the contract, has partly performed it to such an extent that a repudiation of the contract by the CT Page 5567 other party would amount to the perpetration of a fraud, equity looks upon the contract as removed from the operation of the statute of frauds and will enforce it by specific performance or give other relief as the case may be." Santoro v. Mack, supra
[108 Conn. 683, 145 A. 273 (1929)] 690. The acts of part performance must be of such a character that they can be reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute. Rutt v. Roche, 138 Conn. 605, 608, 87 A.2d 805 (1952).
 It is generally held that partial or even full payment of the purchase price for the sale of land under an oral contract does not take the case out of the statute of frauds. Santoro v. Mack, supra, 691; McMahon v. Plumb, 88 Conn. 547, 553, 92 A. 113
(1914); Kimberly v. Fox, 27 Conn. 307, 316 (1858). The reason usually given for this rule is that the purchaser normally may have restitution of the consideration paid so that his predicament does not warrant the application of an equitable doctrine designed to prevent the statute of frauds itself from becoming an "engine of fraud." 73 Am.Jur.2d, Statute of Frauds 436; see Harmonie Club, Inc. v. Smirnow, 106 Conn. 243, 249, 137 A. 769 (1927) . . . The construction of substantial improvements on the land by the purchaser, however, has been regarded as the strongest and most unequivocal act of part performance by which an oral contract to purchase land is taken out of the statute of frauds. 73 Am.Jur.2d, Statute of Frauds 424.
Breen v. Phelps, 186 Conn. 86, 94, 95, 439 A.2d 1066 (1982).
The plaintiff has offered no evidence that would in any way constitute part performance sufficient to take the alleged oral contract out of the Statute of Frauds.
For the foregoing reasons, summary judgment may enter in favor of the defendant in this action.
AURIGEMMA, J.